**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| LINDY G. WRIGHT,           ) | |
|                            ) | |
|    Plaintiff ) | |
|                            ) | |
| v.                         ) | Civil Action No. 3:06-cv-1087-WKW |
|                            ) | |
| CHATTAHOOCHEE VALLEY       ) | |
| COMMUNITY COLLEGE (CVCC), et al.,  ) | |
|                            ) | |
|    Defendants ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS AND MOTION TO STRIKE PORTIONS OF PLAINTIFF LINDY WRIGHT'S EVIDENTIARY SUBMISSIONS CONTAINED IN PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

PLAINTIFF, Lindy G. Wright ("plaintiff" or "Wright"), by and through the undersigned counsel of record, files her response to defendants' objections and motion to strike portions of plaintiff's evidentiary submissions contained in her opposition to defendants' motion for summary judgment. (Doc. # 24). Relying upon Rule 56 of the Federal Rules of Civil Procedure and the Federal Rules of Evidence, defendants have interposed a number of objections to plaintiff's opposition to their motion for summary judgment (Doc. # 20), and have also moved the Court to strike portions of plaintiff's evidentiary submissions thereto. Plaintiff herein incorporates by reference plaintiff's opposition to defendants' motion for summary judgment. (Doc. # 20).

Plaintiff has addressed each of the defendants' objections and motion to strike in the order in which they presented them in their supporting brief. In so far as defendants' objections to plaintiff's opposition to their motion for summary judgment and motion to strike purports to establish factual statements or legal conclusion as undisputed between the parties, their motion is

due to be denied. *Top Notch Consulting, Inc, v. Universal City, LLC.,* 2007 WL 841663 (M.D. Ala. 2007). In support thereof, plaintiff would show unto the Court the following:

## DISCUSSION

## I: RULE 56, FEDERAL RULES OF CIVIL PROCEDURE

In support of their objections and motion to strike portions of plaintiff's evidentiary submissions opposing defendants' motion for summary judgment, defendants contended that portions of Wright's deposition and affidavit failed to meet the standards of Rule 56(e) of the Federal Rules of Civil Procedure for affidavits and deposition testimony submitted in opposition to a motion for summary judgment. Specifically, defendants argued that Wright submitted in opposition to defendants' motion for summary judgment statements and exhibits that failed to meet the standards of Rule 56(e) of the Federal Rules of Civil Procedure, and that plaintiff's statements were, therefore, inadmissible because they were conclusory, hearsay, speculative, or irrelevant as to any of the issues raised in this case.

It must be noted at the outset that Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Court shall consider all evidence in the record when reviewing a motion for summary judgment, and can only grant summary judgment if everything in the record demonstrates that no genuine issue of material fact exists. *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406 (5th Cir. 1980).

Furthermore, Rule 56(e) of the Federal Rules of Civil Procedure requires that affidavits

submitted in support of or in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall affirmatively show that the affiant is competent to testify to the matters stated therein." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In addition, deposition testimony submitted in opposition to a motion for summary judgment must comply with the requirements of Rule 56(e) of the Federal Rules of Civil Procedure.

## II: HEARSAY

According to Federal Rule of Evidence 801(c), hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Federal Rule of Evidence 801(d)(2) provides that a statement is not hearsay if "The statement is offered against a party and is (A) the party's own statement in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Additionally, there are various other exceptions to the rule prohibiting the admission of hearsay.

## III: STATEMENTS FROM LINDY WRIGHT'S DEPOSITION

Defendants asserted that portions of Wright's deposition testimony were not based on personal knowledge, were factually unsupported, and thus constituted inadmissible hearsay for which they should be stricken from the record. (Defs. Br. pp. 3-5). Wright's statements are

generally not hearsay. Firstly, Wright's statement that she lost her clinical care plans in NUR252 was not an assertion of her "belief," and she did not proffer it as another person's statement. Defendants claimed that Wright's statement was not based upon personal knowledge because, according to defendants, Wright "overheard" a conversation in which Sandra Gunnels ("Gunnels") and Deborah Gruber ("Gruber") discussed the care plans.

Defendants also asserted that at the time of the conversation, "neither Ms. Gunnels nor Ms. Gruber was employed at CVCC." (Defs' Br. p. 4). In her deposition, Wright testified that Gruber was her clinical instructor in NUR252 in the fall semester 2005, and that Gruber had lost the care plans for her entire clinical group at the Columbus Medical Center hospital (Wright Depo. pp. 123-126, attached to plaintiff's opposition to defendants' motion for summary judgment as Exhibit # 1). Wright testified that to make up for the lost care plans, Lynn Harris ("Harris"), the instructor, summarily awarded her 46 out of a total of 50 points. Therefore, Wright's deposition testimony was based upon personal knowledge that Gruber was her clinical instructor in NUR252 who could not account for the clinical care plans entrusted to her care to grade, and as such Wright's statement was not proffered for the truth of the matter asserted.

Similarly, Wright's deposition testimony regarding conversations Dixie Peterson ("Peterson") had with Gunnels and Brenda Bellamy ("Bellamy") regarding Wright as a "weak student" was not hearsay because it was not offered to prove the truth of the matter asserted. In her deposition, Wright testified that when she filed the grade appeal in NUR252, she also learned from Gunnels and Bellamy that Peterson had told them during the first semester (summer 2005) that "she [Peterson] asked everybody the first semester, how everybody did, what their grades were, and that I was specifically picked out and said that I was a weak student, that I didn't pass my LPN boards the first time, that I did not need to pass the second semester" (Wright Depo. p.

264:11-20, p. 265, attached to plaintiff's opposition to defendants' motion for summary judgment as Exhibit # 1). In an oral deposition Gunnels testified that

> "Ms. Peterson came into the faculty offices and as I recall Ms. Brenda Bellamy was present and potentially Debra Grouper. We had offices and Ms. Peterson was kind of going back and forth and in between. And she had come by and asked was anyone going to fail. And we said, no. And I believe it was Ms. Bellamy said that Lindy had been close in her course but that she had – her grades had come up at the end and she had made a C. And Ms. Peterson made a statement to the effect of y'all need to flunk her, she does not need to pass, she is weak, she's not going to pass boards, y'all need to flunk her" (Gunnels Oral Depo. p. 10:15-25, attached to plaintiff's opposition to defendants motion for summary judgment as Exhibit # 2).

Gunnels elaborated further by saying that

> "It was a general statement, and I perceived it not as -- and I know she would not have done, asking us to go back and change grades that Lindy had made but the assumption at that point in time was Ms. Bellamy and I would be returning for the fall semester and we would both have Lindy again as a student, myself in obstetrics, Ms. Bellamy in her advance medical surgical coursework. And it was -- or I perceived it as a, in the future this needs to occur, that she verbalized that she did not feel that Lindy would pass boards and would be a liability and did not need to pass" (Gunnels Oral Deposition, p. 14:10-20, attached to plaintiff's opposition to defendants' motion for summary judgment as Exhibit # 2). Gunnels acknowledged these statements during her deposition (Gunnels Depo. pp. 232-238, attached to plaintiff's opposition to defendants' motion for summary judgment as Exhibit # 3).

In her deposition, Peterson did not deny Wright's assertion that she had spoken with Gunnels and Bellamy about her: "I remember, as I always do, asking Ms. Bellamy and Ms. Gunnels did it look like anybody was going to fail. Beyond that, I do not remember anything specifically" (Peterson Depo. p. 67:19-23, attached to plaintiff's opposition to defendants' motion for summary judgment as Exhibit # 4). Peterson also said: "I frequently ask instructors who is borderline, who is not passing. And I have made statements in the past in general that students should not pass if they do not have mastery of the information" (Peterson Depo. p. 69:12-17, attached to plaintiff's opposition to defendants' motion for summary judgment as Exhibit # 4).

Statements Peterson made to Gunnels and Bellamy that Wright and Gunnels testified to during their respective depositions are not hearsay because they were not offered for the truth of the matter asserted. The statements were offered to support the fact that Peterson had spoken with Gunnels and Bellamy about Wright's ability to progress in the nursing program. Definitionally, the statements Peterson made to Gunnels and Bellamy are not hearsay; they can be offered circumstantially to prove Peterson's state of mind. Furthermore, counsel for defendants deposed Wright, and could have asked Wright to clarify statements they now claim as hearsay but elected not to do so. Therefore, for the reasons set forth above, defendants' objections to portions of Wright's deposition statements and motion to strike are due to be denied.

### IV: SANDRA GUNNELS' STATEMENTS REGARDING EVENTS AT CVCC AFTER AUGUST 31, 2005

Defendants raised objections to statements Gunnels proffered during her depositions because, they asserted, she was no longer employed by CVCC after turning in her resignation on August 31, 2005, and that her statements constituted inadmissible hearsay. Specifically, defendants objected to Gunnels' claim that after her resignation from CVCC "there was some time period where there was not stability in some of the instruction. And also, I know there was a lot of unrest on campus and within the nursing students and nursing division" (Gunnels Depo. p. 131:7-12, attached to plaintiff's opposition to defendants' motion for summary judgment as Exhibit # 3). Gunnels offered these statements not to prove the truth of the matter asserted but to support the fact that CVCC nursing students, including Wright, telephoned Gunnels for assistance with their course work and test questions (Gunnels Depo. pp. 13-14, 16, 19, 21-24, 131:16-23, attached to plaintiff's opposition to defendants' motion for summary judgment as

Exhibit # 3). Gunnels' testimony was based on personal knowledge, admissible, and within the subjects about which she is competent to testify at trial.

In her deposition, Wright testified that "There was always chaos in that class. There was always something going on, somebody fussing" (Wright Depo. p. 218:18-21, attached to plaintiff's opposition to defendants' motion for summary judgment as Exhibit # 1). Wright also testified that "When the instructors left and we didn't have instruction for the first five weeks -- the majority of my class was from Atlanta, and they were very vocal and wanted to know what was going on, where the instructors were, what are you going to do to replace them; I want to see my test" (Wright Depo. p. 219:17-23, attached to plaintiff's opposition to defendants' motion for summary judgment as Exhibit # 1). The students in her nursing class, according to Wright, were upset, and that "It was just chaos" (Wright Depo. p. 225:20-23, attached to plaintiff's opposition to defendants' motion for summary judgment as Exhibit # 1). These are matters are based on personal knowledge, are admissible, and within the subjects about which Wright is competent to testify at trial.

### V: SANDRA GUNNELS' REVIEW OF LINDY WRIGHT'S TESTS

With regard to test questions Gunnels reviewed, defendants asserted that Wright's handwritten questions were "inexact," that Wright copied questions from various tests, including the final exam in NUR252 taught by Lynn Harris ("Harris"), that counsel for Wright asserted that Exhibit 23 in plaintiff's opposition to the motion for summary judgment was a true and accurate copy of Wright's final exam, and that the document was irrelevant, inaccurate, unreliable and therefore constituted inadmissible hearsay (Defs' Br. pp. 6-8).

Firstly, the questions in issue were not proffered as another person's statements; they were questions Wright copied from Harris' final exam in Harris' office. Secondly, Gunnels had

personal knowledge of what was going on in some of the nursing courses even after she resigned from CVCC on August 31, 2005, because CVCC nursing students contacted her when they needed additional assistance (Gunnels Depo. p. 21-23, attached to plaintiff's opposition to defendants' motion for summary judgment as Exhibit # 3).  One such contact led Gunnels to review Wright's NUR252 final exam and concluded that there were at least sixteen (16) "clear cut" instances in which Harris marked wrong answers Wright got right.  Thirdly, Gunnels is competent to testify to the matters stated in her deposition to the extent that Wright contacted her to review test materials.  Wright has not asserted that Gunnels was an expert witness, only that she contacted her for assistance with course work and tests items in NUR252.  Fourthly, defendants did not point to any test items Wright allegedly took from various tests.  Fifthly, it is for the trier of facts to weigh the evidence presented in a "jumble of handwritten notes" (Def's Br. p. 7) and determine their correctness.

As the court held in *McKenzie v. Citation Corporation, LLC*., 2007 WL 1424555 (S.D. Ala., 2007), citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986), "The trial court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Similarly, the court should decline to strike any of the material objected to as irrelevant because this case is not before a jury.  The court also held that it was "a waste of judicial economy to strike through every phrase that is of questionable probative value," since the court is capable of considering only admissible, relevant and proper portions of the evidence submitted in support of or in opposition to a motion for summary judgment. *McKenzie*, FN 6, supra.  For the reasons set forth above, defendants' objections to Gunnels' deposition statements and motion to strike are due to be denied.

### VI: **WHETHER CAROLLA RAMBO, ARIT UMOH, AND SHANNAH LOWE**

## ARE SIMILARLY SITUATED STUDENTS

Defendants objected to Wright's assertions that Carolla Rambo ("Rambo"), Arit Umoh ("Umoh"), and Shannah Lowe ("Lowe") were students similarly situated to her. Defendants repeated similar assertions on p. 41 of their brief. Wright testified during her deposition and in her affidavit (submitted as Exhibit # 12 in plaintiff's opposition to defendants' motion for summary judgment) that Umoh was in her RN clinical class where they did a check-off during the first week of the fall semester 2005. Therefore, Wright had personal knowledge to testify about Rambo as a similarly situated student in her class.

Defendants' proffer of a "correct definition" of "similarly situated," to include CVCC AND students excluded for failing two courses, is legally conclusory and should be excluded. Whether Rambo, Umoh, and Lowe were similarly situated to Wright presents a genuine issue of material fact for the jury to decide. Similarly, whether Umoh received special treatment with regard to the number of times CVCC allowed her to retake NUR272 after the intervention of an attorney raises a genuine issue of material fact as to whether or not Umoh received special treatment. That issue of material fact cannot be resolved in a motion for summary judgment.

Additionally, defendants did not refute Wright's assertion that Umoh received special treatment. Instead, defendants relied merely upon denials that Umoh did not receive special treatment. It is not enough that the defendants merely disputed or refuted an immaterial fact. Also, whether Umoh received course forgiveness for NUR272 raises a genuine issue of material fact, especially because Peterson denied knowledge of Umoh receiving "course forgiveness."

Defendants also seek to strike Wright's statements as lacking personal knowledge about CVCC allowing Lowe to take a make-up lab for NUR272. Jill Boyette, a student in Wright's spring 2006 NUR272 clinical group, discussed the fact that Lowe had failed the clinical portion

of the course taught by Artemisa Harmon. Wright also testified that Bridgett Jackson took Lowe to the lab to redo her clinicals (Wright Depo. pp. 207-211, attached to plaintiff's opposition to defendants' motion for summary judgment as Exhibit # 1). During her deposition, Peterson did not dispute the fact that Lowe was allowed to take a makeup lab for NUR272 (Peterson Depo. p. 106, attached to plaintiff's opposition to defendants' motion for summary judgment as Exhibit # 4). Nor have the defendants, in their objections and motion to strike, presented evidence to refute the assertion that Lowe was Dean James Lowe's niece. Whether Lowe and Dean James Lowe are related is a fact question to be decided by the jury and thus inappropriate for resolution in a motion for summary judgment.

The trial court does not decide issues of fact, but determines whether there are issues of fact to be decided by the jury. Resolution of factual issues is a duty reserved to the jury. Defendants bear the burden of proving that there is no genuine issue as to any material fact. If reasonable minds could differ on the inferences arising from undisputed facts, then the court should deny summary judgment. For the reasons set forth above, defendants' objections to Wright's statements about Rambo, Umoh, and Lowe as similarly situated students and motion to strike are due to be denied.

### VII: ELISE SIZEMORE'S LETTER TO DAVID HODGE

Defendants have asserted that the letter Elise Sizemore ("Sizemore") sent to David Hodge ("Hodge"), Dean of Instruction at CVCC, constituted inadmissible hearsay because, they alleged, it lacked proper authentication under Federal Rule of Evidence 901(2), and is irrelevant pursuant to Federal Rule of Evidence 801. (Defs' Br. p. 19). Defendants also contended that there was no evidence Hodge received the letter, that the letter was misleading and would confuse the issues, that there was no evidence Wright and Sizemore were similarly situated, and

that Sizemore did not receive special treatment or consideration. (Def's Br. pp. 19-22).

To begin with, Wright proffered Sizemore's letter not to prove the truth of the matter asserted but to demonstrate that CVCC instructors made mistakes in their calculations of grades, in this instance in NUR252 taught by Harris in the fall semester 2005. The letter also demonstrated that Sizemore also tried to meet with Harris to review math calculations, and that Harris was not available to discuss her final grade in NUR252 until January 18, 2006, two weeks into the spring 2006 semester. Mistakes or misunderstanding over the final grade for NUR252 led CVCC to notify Sizemore that she had "too many classes to complete" the requirements for the spring 2006 graduation.

Furthermore, defendants produced Sizemore's letter (attached to plaintiff's opposition to defendants' motion for summary judgment as Exhibit # 7) to plaintiff during discovery, and so to argue that Hodge did not receive the letter is not for the plaintiff to ascertain. The issue of whether or not Hodge received the letter is going to be left to the jury to determine. Furthermore, defendants have not said how the letter in question would mislead the court or the jury. The weight and credibility to be attached to the letter are matters within the purview of the jury. The letter is admissible if the original is in the possession of Dean Hodge and CVCC. Rule 1004(3) of the Federal Rules of Evidence states that "At a time when an original was under the control of the party against whom offered, that party was put on notice, by the pleadings or otherwise, that the contents would be a subject of proof at the hearing, and that party does not produce the original at the hearing." *King v. Kirkland's Stores, Inc.*, 2006 WL 2239203 (M. D. Ala. 2006). Therefore, based upon the facts and authorities set forth above, defendants' objections and motion to strike Sizemore's letter to Hodge are due to be denied.

### VIII: LINDY WRIGHT'S AFFIDAVIT

The Eleventh Circuit has held that an affidavit can be disregarded when it constitutes a sham. *Van T. Junkins and Associates v. U.S. Industries*, 735 F.2d 656 (11th Cir. 1984), adopting the Second Circuit's proposition in *Perma Research and Development Co. v. Singer Co.*, 410 F.2d 572 (2nd Cir. 1969). According to the Second Circuit, any issue raised in an affidavit that was flatly contradicted by an earlier deposition was so suspect of untruthfulness that it can be disregarded as a matter of law. In *Tippens v. Celotex Corp.*, 805 F.2d 949 (11 Cir. 1986), the Eleventh Circuit made a distinction between discrepancies that create transparent shams and discrepancies that create an issue of credibility or go to the weight of the evidence. In reversing the District Court's holding that Frank McIntyre's deposition testimony was a sham, the Eleventh Circuit determined that the apparent inconsistency between the affidavit and deposition was merely an inability to recall specific times, places, and situations. The Eleventh Circuit concluded that McIntyre's affidavit was not inherently inconsistent with the deposition testimony, and should have been considered with everything in the record, resolving all doubts in favor of the nonmoving party. See also *McGaughy v. Kitchens Express,* 2007 AL 1266862 (M.D. Ala. 2007), *Thomas v. Alabama Council on Human Relations., Inc.*, 248 F. Supp. 1105 (M.D. Ala. 2003), and *Norman v. Southern Guaranty Ins. Co.,* 191 F. Supp. 2d 1321 (M.D. Ala. 2002).

In their objections and motion to strike, defendants claimed that Wright's affidavit offered additional testimony that contradicted her earlier deposition testimony. Applying the proposition the Eleventh Circuit enunciated in *Tippens, supra,* Wright's affidavit did not recant the statements made in her deposition, and those statements were made on personal knowledge. Specifically, Wright mentioned that Umoh was in her RN check-off in the first week of the fall semester 2005. Wright obviously made a mistake in citing August 24, 2007, as the date Gunnels

and Bellamy resigned from CVCC; the correct date was August 31, 2005.  Defendants made similar mistakes in their brief (pp. 27-28), citing September 7, 2007, as the date the first class met after the resignations of Gunnels and Bellamy; September 14, 2007, as the date Harris began to teach as a full-time instructor; and September 21, 2007, as the first date Tawyna Cash ("Cash") began to teach as a full-time instructor for CVCC.  Wright never said she was in the RN program in May 2004, but that Umoh was.

Whether or not "no instruction" was provided to students after the resignations of Gunnels and Bellamy, and other issues relating to the qualifications of the "guest speakers" are fact issues to be determined by the jury. Certainly, CVCC assigned Christopher, a critical care nurse and an adjunct instructor who taught respiratory principles, to teach Bellamy's course (NUR252) for "a class and a half;" Christopher also served as a guest speaker in respiratory concepts.  On September 14, 2005, CVCC hired Harris to teach Bellamy's NUR252 course.  On September 21, 2005, CVCC hired Cash, a nursing instructor from Southern Union College in Opelika, Alabama, as a part-time nursing instructor to teach Gunnels' NUR271 course.

Disputed facts as to whether Harris was availability to students during the fall semester 2005, the whereabouts of care plans and grades, and the dates and times Wright met with Dr. Laurel Blackwell and Hodge are also matters within the province of the jury.  Wright testified during her deposition that when she asked to meet with Harris to discuss her grade, Harris was "very ugly and nasty," and "very defensive" (Wright Depo. p. 128:5-13, attached to plaintiff's opposition to defendants' motion for summary judgment as Exhibit # 1).  And when the meeting finally took place on December 13, 2005, Wright stated that Harris "Raised her voice.  I mean, her face would turn red and she would just get excited" (Wright Depo. p. 128:20-23, p. 130:3-4, attached to plaintiff's opposition to defendants' motion for summary judgment as  Exhibit # 1).

As the Eleventh Circuit held in *Tippens* (at 953), supra, citing *Warrior Tombigee Transportation Co. v. M/V NAN FUNG*, 695 F.2d 1294, 1298 (11th Cir. 1983), the district court must not resolve factual disputes by weighing conflicting evidence. It is the province of the jury to assess the probative value of any evidence presented to it. Since it is the role of the jury to resolve questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made in an early deposition. See *Johnson v.* Wright, 2005 WL 2145737 (M. D. Ala. 2005), *McKenzie*, supra. For the reasons and authorities set forth above, defendants' objections and motion to strike Wright's affidavit are due to be denied.

## IX: CORRESPINDENCE FROM COONIE COOPER

Defendants also objected to Wright's submission of correspondence relating to Coonie Cooper ("Cooper") (submitting as Exhibits # 13 and 18 in plaintiff's opposition to defendants' motion for summary judgment) as violative of Federal Rule of Evidence Rule 408 prohibiting evidence of an offer to compromise a claim or possible claim. Defendants also averred that Cooper's letters were offered "to prove certain facts with statements made in each letter." (Def's Br. p. 35).

Cooper's letters are not hearsay because they were not offered to prove the truth of the matter asserted or to settle a claim. Instead, they were offered to prove that Cooper had a telephone conversation with Dean Lowe regarding Wright's grade appeal. In one of the letters, dated January 10, 2006 (and attached as Exhibit # 13 in plaintiff's opposition to defendants' motion for summary judgment), Cooper offered to "assist Ms. Wright in pursuit of her due process rights regarding her grade appeal of two college courses." The second letter, dated June 7, 2006 (attached as Exhibit # 18 in plaintiff's opposition to defendants' motion for summary judgment), is not offered to prove the truth of the matter asserted, but to remind Dr. Blackwell of

actions to be taken on a wide range of issues including the substitution of NUR 200 for NUR252 and attempts to retake NUR272.  As the court held in *Armstrong v. HRB Royalty, Inc.,* 392 F. Supp. 2d 1302, 1305 (S.D. Ala. 2005), citing *Vulcan Hart Corp. v. National Labor Relations Board*, 718 F. 2d 269, 277 (8th Cir. 1983), "Rule 408 excludes evidence of settlement offers only if such evidence is offered to prove liability for or invalidity [or amount] of the claim under negotiation."  For the reasons set forth above, defendants' objections and motion to strike are due to be denied.

### X: DEPOSITION OF SANDRA GUNNELS, NOVEMBER 1, 2006

Defendants asked that the court strike Gunnels' deposition of November 1, 2006, as inadmissible and failing to meet the requirements of Rules 27 and 30 of the Federal Rules of Civil Procedure.  Defendants adopted and incorporated Gunnels' oral deposition into her deposition on July 24, 2007 at pp-226-238.  For the foregoing reason, defendants' motion to strike is due to be denied.

### CONCLUSION

For the foregoing reasons and authorities cited herein, defendants' objections to plaintiff's opposition to defendants' motion for summary judgment and motion to strike are due to due to be denied.

Respectfully submitted on this the 19th day of December, 2007.


/s/ Peter A. Dumbuya                                        /s/ Jennifer B. Cooley.
Peter A. Dumbuya (DUM006)                      Jennifer B. Cooley (COO083)
Attorney for Plaintiff                                       Attorney for Plaintiff
P.O. Box 3302                                                  1507 Broad Street
Phenix City, AL 36868                                    Phenix City, AL 36867
(706) 289-5082                                                 (334) 298-7062

## **CERTIFICATE OF SERVICE**

We hereby certify that on December 19, 2007, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Hon. H.E. Nix, Jr.
Hon. Brandy F. Price
Nix, Holstford, Gilliland, Higgins & Hitson, P.C.
P.O. Box 4128
Montgomery, AL 36103

Hon. Joan Davis
Department of Post Secondary Education
401 Adams Street, Suite 280
Montgomery, AL 36130

/s/ Peter A. Dumbuya