IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| LINDY G. WRIGHT, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 3:06-cv-1087-WKW |
| ) | |
| CHATTAHOOCHEE VALLEY ) | |
| COMMUNITY COLLEGE (CVCC), et al., ) | |
| ) | |
| Defendants ) | |

### PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY TO THE PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

PLAINTIFF, Lindy G. Wright ("plaintiff" or "Wright"), by and through the undersigned counsel of record, files this response to defendants' reply ("defendants' reply") to her opposition to defendants' motion for summary judgment, and incorporates by reference her opposition to defendants' motion for summary judgment (Doc. # 20). In their reply to plaintiff's opposition to the motion for summary judgment, defendants asserted that (1) plaintiff's brief in opposition to the motion for summary judgment contained inaccuracies; (2) plaintiff's exhibits constituted or contained inadmissible hearsay or irrelevant information; (3) no genuine issues of material facts upon which relief can be granted exist, and as such they have a "lawful right" to summary judgment; (4) "The inaccuracies pointed out in this brief consist, for the most part, of simple things that should not be contested by the Plaintiff. For example, the Plaintiff's Brief confuses the term "course forgiveness" with the term "grade appeal" or "grade forgiveness;" and (5) defendants' set of facts are "uncontroverted facts." (Defs. Br. pp. 1-2).

In *Top Notch Consulting, Inc., v. Universal City, LLC.,* 2007 WL 841663, 1 (M.D. Ala. 2007) the court, in granting Universal City's and Frederick J. Beasley, III's motion to strike

(Doc. # 57), held that "Plaintiff's Response to Defendants' Motion for Summary Judgment purports to establish factual statements or legal conclusions as undisputed between the parties." Similarly, in this case defendants have suggested that the factual statements and legal conclusions in the fact section of defendants' reply below are undisputed. For the reasons and authorities set forth below, defendants' motion for summary judgment and response to plaintiff's opposition to defendants' motion for summary are due to be denied.

## LIST OF UNDISPUTED FACTS

Rule 56(c) mandates a trial court to render summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file point to the absence of a genuine issue as to any material fact. *Alabama Farm Bureau Mutual Casualty Co. Inc. v. American Fidelity Life Insurance Co.*, 606 F.2d 602, 609 (5th Cir. 1979). Before a trial court can grant a motion for summary judgment, it must view all of the evidence and all factual inferences from the evidence in the light most favorable to the nonmoving party, and to resolve all doubts against the moving party. *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345 (5th Cir. 1989). In addition, when "reasonable minds might differ on the inferences arising from undisputed facts," summary judgment must be denied. *Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982).

Defendants have proffered the statement that "On January 26, 2006, Dean Lowe officially approved the substitution of NUR 200 for NUR 252. … As such, Ms. Wright's failed grade of "D" in NUR 252 was not held against Ms. Wright for the purpose of graduating, assuming Ms. Wright successfully completed all of her Spring 2006 course work." (Def's Br. p. 11). A number of inferences over which reasonable minds might differ can be drawn from the latter statement. Firstly, was the grade of "D" in NUR252 held against Wright because she did

not successfully complete all of her course work in the spring semester 2006? Secondly, did Dean Lowe make it clear to Wright that the grade of "D" in NUR252 would be held against her if she did not pass another course in the spring semester 2006? Thirdly, did Dean Lowe make it clear to Wright that the grade of "D" in NUR252 would not be held against her under any circumstance? Fourthly, did Dean Lowe attach any other conditions to the authorization for Wright to take NUR200? These are questions of material fact to be decided by the jury, and are therefore inappropriate for resolution in a motion for summary judgment.

Wright has argued all along that the grade of "D" in NUR252, which remained on her transcript (Defs. Br. p 12, ¶ 22), was held against her despite assurances given by Dean Lowe and Peterson that it would not be held against her. In early January 2006, before the beginning of the spring semester, Wright met with Peterson and Dean Lowe who authorized her to enroll in NUR200 in place of NUR252 because NUR252 would no longer be offered because of a change in the nursing curriculum to a standardized curriculum that would go into effect in the summer semester 2006. Wright has also averred that she had an agreement with Peterson and Lowe for her to take NUR200 in place of NUR252, and that they assured her that "the D [in NUR252] will not come off of your transcript, but it will not be held against you" (Wright Depo. p. 147:5-23, attached to plaintiff's opposition to defendants' motion for summary judgment as Exhibit # 1).

On January 10, 2006, attorney Connie Cooper ("Cooper") followed this up with a letter to Dean Lowe seeking assurances that Wright "will be allowed to continue classes until a ruling on her appeal is rendered. In the event she is not allowed to continue classes, I understand that concessions will be made later, in the event the ruling of her appeal is successful. We are aware of other students who have been allowed to continue class pending their appeal" (Letter from Cooper to Lowe, attached to plaintiff's opposition to defendants' motion for summary judgment

as Exhibit # 13). One of those students was Elise Sizemore who registered for NUR272 even though CVCC had informed her on December 20, 2005, that she had failed NUR252. Sizemore went on to say that "Mrs. Peterson instructed me to go ahead and attend the classes that I had registered for even though a requirement for NUR272 is the completion of NUR252 per the Spring 2006 syllabus" (Letter from Sizemore to Hodge, attached to plaintiff's opposition to defendants' motion for summary judgment as Exhibit # 7).

In a January 17, 2006, e-mail sent by Peterson to Heather Chalkley and copied to Dean Lowe, among others, Peterson wrote that NUR200 was a substitute for NUR252. Specifically to Sanquita Alexander, Peterson wrote: "Sanquita, I will be requesting of Dean Lowe to sign a substitution form for Nursing 200 to be accepted for Nursing 252, so Lindy will be registering for Nursing 200 to fulfill the 252 requirement" (E-mail from Peterson to Heather Chalkley, attached to plaintiff's opposition to defendants' motion for summary judgment as Exhibit # 14; Authorization for Course Substitution, attached to plaintiff's opposition to defendants' motion for summary judgment as Exhibit # 15).

In the **PREFACE TO ARGUMENT** (Defs' Br. p. 17), defendants listed the three causes of action in plaintiff's complaint, namely due process violation, civil conspiracy, and the tort of outrage, but then went on to say that "the Complaint itself is a rambling, factually and chronologically confused document." (Defs' Br. p. 20). Rule 12(e) of the Federal Rules of Civil Procedure provides a remedy for what counsel for defendants described as a "rambling" complaint. It is a "Motion for More Definite Statement." It provides that "If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the

details desired." If counsel for defendants did not avail themselves of this rule, they cannot complain of confusion at the summary judgment stage.

## PLAINTIFF'S DUE PROCESS CLAIM

In their reply to plaintiff's opposition to the motion for summary judgment, defendants claimed there are no issues of material fact, and that they are entitled to a summary judgment. The material issue here is not whether plaintiff is seeking reconsideration of the grade appeal in NUR252, but whether Peterson and Dean Lowe gave plaintiff assurances that the grade of "D" in this course would not be held against her and then held against her at the end of the spring semester 2006. This disputed fact cannot be made into an "undisputed" fact or dismissed as a plaintiff's quest for a "degree by lawyer." (Def's Br. p. 24). The trial court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *McKenzie v. Citation Corp.,* 2007 WL 1424555 (S.D. Ala. 2007); *Keiser v. Coliseum Properties, Inc*., 614 F.2d 406 (5th Cir. 1980).

In the instant case, unlike *Hammond v. Auburn University*, 669 F. Supp. 1555 (M.D. Ala. 1987), which was an equal protection case, and *Mahavongsanan v. Hall*, 529 F. 2d 448 (5th Cir. 1976), where the issue was failure in a graduate degree comprehensive examination, there are allegations that Peterson considered Wright a "weak student." Plaintiff offered the deposition testimonies of Sandra Gunnels and Peterson herself in plaintiff's opposition to the motion for summary judgment (Doc. # 20). Gunnels did not "incite" Wright by telling her Peterson had described her as a "weak student." (Def's Br. p. 38).

In her opposition to defendants' motion for summary judgment (Doc. # 20), Wright averred that when she filed the grade appeal in NUR252, she also learned from Gunnels and Brenda Bellamy that Peterson had told them during the first semester (summer 2005) that "she

[Peterson] asked everybody the first semester, how everybody did, what their grades were, and that I was specifically picked out and said that I was a weak student, that I didn't pass my LPN boards the first time, that I did not need to pass the second semester" (Wright Depo. p. 264:11-20, p. 265, attached to plaintiff's opposition to defendants' motion for summary judgment as Exhibit # 1). In an oral deposition obtained by Wright, Gunnels described a situation wherein Peterson suggested that Wright was a weak student and that she needed to be flunked. Gunnels testified that

> "Ms. Peterson came into the faculty offices and as I recall Ms. Brenda Bellamy was present and potentially Debra Grouper. We had offices and Ms. Peterson was kind of going back and forth and in between. And she had come by and asked was anyone going to fail. And we said, no. And I believe it was Ms. Bellamy said that Lindy had been close in her course but that she had – her grades had come up at the end and she had made a C. And Ms. Peterson made a statement to the effect of y'all need to flunk her, she does not need to pass, she is weak, she's not going to pass boards, y'all need to flunk her" (Gunnels Oral Depo. p. 10:15-25, attached to plaintiff's opposition to defendants' motion for summary judgment as Exhibit # 2).

Gunnels elaborated further by saying that

> "It was a general statement, and I perceived it not as -- and I know she would not have done, asking us to go back and change grades that Lindy had made but the assumption at that point in time was Ms. Bellamy and I would be returning for the fall semester and we would both have Lindy again as a student, myself in obstetrics, Ms. Bellamy in her advance medical surgical coursework. And it was -- or I perceived it as a, in the future this needs to occur, that she verbalized that she did not feel that Lindy would pass boards and would be a liability and did not need to pass" (Gunnels Oral Deposition, p. 14:10-20, attached to plaintiff's opposition to defendants' motion for summary judgment as Exhibit # 2). Gunnels acknowledged these statements during her deposition (Gunnels Depo. pp. 232-238, attached to plaintiff's opposition to defendants' motion for summary judgment as Exhibit # 3).

In her deposition, Peterson had this to say: "I remember, as I always do, asking Ms. Bellamy and Ms. Gunnels did it look like anybody was going to fail. Beyond that, I do not remember anything specifically" (Peterson Depo. p. 67:19-23, attached to plaintiff's opposition to defendants' motion for summary judgment as Exhibit # 4). In another instance, Peterson said:

"I frequently ask instructors who is borderline, who is not passing. And I have made statements in the past in general that students should not pass if they do not have mastery of the information" (Peterson Depo. p. 69:12-17, attached to plaintiff's opposition to defendants' motion for summary judgment as Exhibit # 4).

In defendants' reply (at p. 41), counsel wrote: "The truth of the matter is that, if a conversation of any kind occurred, it was a conversation about students in general and, potentially, Ms. Wright, in particular. Ms. Peterson may well have said that Lindy Wright is a weak student. This would be true. Lindy Wright clearly was a weak student. Nevertheless, even if the very worst interpretation is put on these alleged statements by Ms. Peterson, they still do not create an issue of fact for a jury." As the court held in *Top Notch Consulting, In.*, supra, defendants are purporting to establish factual statements or legal conclusions as undisputed between the parties. For the reasons set forth above, defendants' motion for summary judgment and objections are due to be denied.

## **SUPERVISORY LIABILITY UNDER § 1983**

Supervisory liability under § 1983 is not "a new allegation" as defendants claimed in their brief (at p. 46) and it is not *respondeat superior* or vicarious liability. However, in order to impose supervisory liability under § 1983, plaintiff must show that the supervisor personally participated in the alleged unconstitutional conduct or that a causal connection existed between the actions of a supervising official and the alleged constitutional deprivation. To establish the causal connection, one must show, for example, facts that support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. *Marzec v. Toulson*, 2007 WL 1035136 (S.D. Ga. 2007), *Gonzalez v. Reno*, 325 F. 3d 1228 (11th Cir. 2003), *Thomas v. Harvard*, 2006 WL

938748 (N.D. GA 2006).

As plaintiff argued in her opposition to defendants' motion for summary judgment, Dr. Blackwell has been the president of CVCC since 2005. In the management and administration of CVCC, Deans Lowe and Hodge, and Peterson, the then Division Chairperson of Health Sciences and Public Service Technologies, assisted Dr. Blackwell (Defs. Mot. pp. 4-6, Blackwell Depo. pp. 29-31, attached to plaintiff's opposition to defendants' motion for summary judgment as Exhibit # 21). As president Dr. Blackwell provides direction to CVCC, implements its policies and procedures, and offers and signs faculty employment contracts. The information that faculty and staff members provided and upon which Dr. Blackwell acted shows that on August 31, 2005, Gunnels and Bellamy abruptly resigned their positions as nursing instructors at CVCC. They were replaced on September 14 and 21 by Lynn Harris and Tawyna Cash respectively.

In the meantime, John Christopher and Pat Fuggatt served as "guest speakers" in the class, with the former teaching for a class and a half. Wright described a class that was characterized by chaos and fussing, with a vocal group of students from Atlanta demanding to know where the nursing instructors were. In her letter to Dean Hodge on January 29, 2006, Elise Sizemore described situations where exams were given in NUR252 with little or no notice or preparation. The lack of nursing instructors for a period of five weeks and the uncertainty it created had a disparate impact upon some of the students including Wright and Sizemore, both of whom had problems passing NUR252.

The information that faculty and staff members provided to Dr. Blackwell and upon which she acted and thus ratified also tends to show that in the spring semester 2006, Dean Lowe ruled on the eligibility of Wright to take NUR200 in place of NUR252. In her letter to Cooper on June 13, 2006, Dr. Blackwell seemed to have ratified the actions of Dean Lowe and Peterson

in substituting NUR200 for NUR252. In May 2006, after "Dixie told me to go talk to whoever," Wright had an unscheduled meeting with Dr. Blackwell to discuss her application for grade forgiveness (Wright Depo. p. 166:22-23, attached to plaintiff's opposition to defendants' motion for summary judgment as Exhibit # 1). According to Wright, Blackwell "basically told me that she had nothing [to] do with the academics, that it was their decision, and that was the extent of that" (Wright Depo. p. 168:7-9, p. 270, attached to plaintiff's opposition to defendants' motion for summary judgment as Exhibit # 1).

Contrary to assurances Dean Lowe and Peterson had given to Wright and Cooper that the failing grade in NUR252 would not be held against her, Dr. Blackwell wrote to say that "However, NUR200 did not take away the failing grade of NUR252; it merely allowed an opportunity for Ms. Wright to repeat a failed course" (Letter from Blackwell to Cooper, attached to plaintiff's opposition to defendants' motion for summary judgment as Exhibit # 19). Even though NUR252 was no longer going to be part of the new standardized curriculum, Dean Hodge wrote Wright to say that course forgiveness can only be given when a student repeats the same course and course number.

Thus, assuming the facts to be as plaintiff alleges them, a jury could determine that Dr. Blackwell violated Wright's rights under § 1983 on the theory of governmental or supervisory liability. *Monell*, supra, *Rizzo v. Goode*, 423 U.S. 362 (1976). Under § 1983, supervisory liability may be shown by either the supervisor's personal participation in the acts that comprise the constitutional violation or the existence of a causal connection linking the supervisor's actions with the violation. *Lewis v. Smith*, 855 F. 2d 736, 738 (11th Cir. 1988).

## CONCLUSION

For the foregoing reasons and authorities, defendants' motion for summary judgment and

objections to plaintiff's opposition to the motion for summary judgment are due to be denied.

Respectfully submitted on this the 19th day of December, 2007.

| | |
|---|---|
| /s/ Peter A. Dumbuya | /s/ Jennifer B. Cooley. |
| Peter A. Dumbuya (DUM006) | Jennifer B. Cooley (COO083) |
| Attorney for Plaintiff | Attorney for Plaintiff |
| P.O. Box 3302 | 1507 Broad Street |
| Phenix City, AL 36868 | Phenix City, AL 36867 |
| (706) 289-5082 | (334) 298-7062 |

CERTIFICATE OF SERVICE

      We hereby certify that on December 19, 2007, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Hon. H.E. Nix, Jr.
Hon. Brandy F. Price
Nix, Holstford, Gilliland, Higgins & Hitson, P.C.
P.O. Box 4128
Montgomery, AL 36103

Hon. Joan Davis
Department of Post Secondary Education
401 Adams Street, Suite 280
Montgomery, AL 36130

                                                /s/ Peter A. Dumbuya