IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

LINDY G. WRIGHT,                     )
                                     )
            Plaintiff,               )
    v.                               )        CASE NO. 3:06-CV-1087-WKW
                                     )
CHATTAHOOCHEE VALLEY                 )
COMMUNITY COLLEGE, *et al.,*         )
                                     )
            Defendants.              )

## MEMORANDUM OPINION

In an Order entered on September 30, 2008 (Doc. # 46), the court granted Defendants'

Motion for Summary Judgment (Doc. # 17) as to Counts I and II of the complaint and

dismissed without prejudice Plaintiff's state-law claim in Count III pursuant to 28 U.S.C.

§ 1367(c)(3).[1]  This Memorandum Opinion sets forth the court's reasoning for its ruling.

## I.  JURISDICTION AND VENUE

The court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.

§ 1331, § 1343, and § 1367.  The parties do not contest personal jurisdiction or venue, and

the court finds adequate allegations in support of both.

## II.  STANDARD OF REVIEW

Summary judgment should be granted when "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

---

[1] The motion was accompanied by a brief and an evidentiary submission.  (Docs. # 17 & 19.)
Plaintiff filed an opposition to the motion, as well as an evidentiary submission.  (Docs. # 20 & 21.)
Defendants filed a reply (Doc. # 25) to which Plaintiff filed a surreply (Doc. # 28).  In granting
Defendants' Motion for Summary Judgment, the court considered all of the materials submitted in
support of and in opposition to the motion.

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). The movant can meet this burden by presenting evidence showing that there is no genuine issue of material fact, or by showing that the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex Corp.*, 477 U.S. at 322-23.

Once the moving party has met its burden, the opposing party may not rest on its pleadings; rather, it must respond – by affidavits or as otherwise provided in the rule – setting out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). To avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine factual dispute exists if a "'reasonable jury could return a verdict for the non-moving party.'" *Damon v. Fleming Supermarkets, Inc.,* 196 F.3d 1354, 1358 (11th Cir. 1999) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)). After the nonmoving party has responded, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### III.  BACKGROUND

Plaintiff Lindy Wright ("Ms. Wright"), a licensed practical nurse, was admitted into the twelve-month Nursing Career Mobility Program at Chattahoochee Valley Community College ("CVCC") in the summer of 2005.  (Wright Dep. at 38.)  This program culminates in the award of a registered nurse degree.   CVCC is "a public educational institution organized and existing under the laws of the State of Alabama."  (Compl. ¶ 6.)

Ms. Wright brings this lawsuit against CVCC and three of its academic officers who are named in both their individual and official capacities.  They are as follows:  (1) Dr. Laurel Blackwell ("Dr. Blackwell"), president of CVCC; (2) James Lowe ("Dean Lowe"), dean of students; and (3) Dixie Peterson ("Ms. Peterson"), head of the nursing department. (Peterson Dep. at 7; Blackwell Dep. at 12; Lowe Aff. at 1.)

Ms. Wright's claims arise out of Defendants' refusal to allow her to complete the nursing program at CVCC.  (Wright Dep. at 290-98.)  In the fall semester of 2005, Ms. Wright earned a "D" in two classes, Adult Nursing II (NUR252) and Pediatric Nursing (NUR271).  (Wright Dep. at 81-82; Compl. ¶¶ 28-29, 32, 39.)  On December 20, 2005, Ms. Peterson informed Ms. Wright by letter that, in compliance with the school's graduation requirements, Ms. Wright was no longer eligible to attend CVCC due to the two "Ds" she earned during the fall semester.  (Defs. Ex. T.)   Ms. Wright appealed both grades on December 20, 2005.  (Harris Aff. at 9.)   Ms. Wright's exam in NUR252 was reviewed by two masters-level nursing instructors from another school, both of whom recommended that

3

the grade not be changed.  (Lowe Aff. attach. 9.)   In a letter dated January 17, 2006, Dean

Lowe informed Ms. Wright that her grade in NUR252 would stand.  (Lowe Aff. attach. 10.)

On January 23, 2006, Ms. Wright's grade in NUR271 was changed from a "D" to a "C"  on

a technicality,[2] (Lowe Aff. attach. 5), and Ms. Wright was allowed to continue her studies.

Now with only one "D," Ms. Wright was permitted to enroll in NUR200 to cover the course

material that she failed to master when she received a "D" in NUR252.  (Wright Dep. at

147.)  Ms. Wright received an "A" in NUR200 and would have been allowed to continue in

the nursing program had she not earned a "D" in NUR272 that same semester.  (Harris Aff.

at 13-14; Compl. ¶ 21.)  With two "Ds" again on her record, Ms. Wright was no longer

eligible to complete her degree.  (Lowe Aff. at 11.)  It was only at this point that Ms. Wright

began claiming that her "A" in NUR200 was intended to expunge from her record the "D"

she earned in NUR252.[3]  (Hodge Aff. attach. 1.)  When Ms. Wright encountered resistance

to this argument, she then requested that her professor re-grade some of her work in

NUR272, a request which was denied.  (Harris Aff. at 15-16.)

Due to her two "Ds," Ms. Wright was not allowed to finish the nursing program.

(Lowe Aff. at 11.)  As a result, Ms. Wright commenced this lawsuit. In Count I, she

---

[2] The course instructor failed to respond to the administration's requests to defend the grade of
Ms. Wright.

[3] Ms. Wright claims she was told that her "D" in NUR252 "would not be held against [her]."
(Compl. ¶¶ 20, 30, 40.)  Ms. Wright understood this statement to mean that the "D" would not count as a
failed class with respect to her progression toward graduation.  In fact, this grade was not held against
Ms. Wright with respect to calculating her grade point average, but the "D" did remain on her transcript.
Thus, when she failed a second class, NUR272, she was prohibited from continuing her studies, in
accordance with school policy.  (Defs. Ex. A at 106 ¶¶ 11-12.)

complains that, by not expunging the "D" she received in NUR252 and allowing her to graduate, Defendants violated her Fourteenth Amendment "due process rights." (Compl. ¶ 32; *see also* Compl. ¶¶ 30 & 34.)  In Count II, Ms. Wright alludes to a "civil conspiracy" and complains that Defendants interfered with her 42 U.S.C. § 1981 "ability to make and enforce contracts at CVCC." (Compl. ¶ 41.)  Ms. Wright seeks compensatory and punitive damages, an injunction ordering Defendants to permit Ms. Wright to complete her degree, declaratory relief, and attorney's fees and costs.  (Compl. at 10.)  In response to these allegations, all Defendants jointly moved for summary judgment.

## IV.  DISCUSSION

Defendants moved for summary judgment on Ms. Wright's two federal claims, as well as on her state law claim.  Defendants raise immunity defenses and also attack the merits of Ms. Wright's claims.  First, the Eleventh Amendment immunity defense will be addressed. Second, the court will turn to Defendants' arguments as they pertain to Ms. Wright's § 1983 and § 1981 claims.  In conclusion,  Ms. Wright's state-law outrage claim will be addressed briefly.

### A.  Eleventh Amendment Immunity

#### 1.  CVCC as a State Agency

Defendants argue that Ms. Wright's claims against CVCC in Counts I and II are barred by Article I, Section 14 of the Alabama Constitution of 1901.  (Defs. Summ. J. Br. at 25 (Doc. # 17).)  The court agrees that CVCC is immune from suit, but bases this

conclusion upon the Eleventh Amendment to the United States Constitution. *See McWilliams v. Escambia Charter Sch.,* 144 F. App'x. 840, 843 (11th Cir. 2005) ("a court may raise an Eleventh Amendment issue on its own").

"[A] suit in which [a] State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "This jurisdictional bar applies regardless of the nature of the relief sought" and regardless of whether a plaintiff's claims are brought under federal or state law. *Id.* State educational institutions, such as CVCC, "are 'agencies or instrumentalities' of the state, and thus are immune from suit in federal court." *Univ. of South Ala. v. Am. Tobacco*, 168 F.3d 405, 412 (11th Cir. 1999) (quoting *Harden v. Adams*, 760 F.2d 1158, 1163-64 (11th Cir. 1985)); *see also Morris v. Wallace Cmty. College-Selma*, 125 F. Supp. 2d 1315, 1335-36 (S.D. Ala. 2001) (finding that an Alabama community college possessed Eleventh Amendment immunity), *aff'd*, 34 F. App'x. 388 (11th Cir. 2002). Accordingly, the court finds that CVCC is entitled to summary judgment on Counts I and II of the complaint.

**2. The Individual Defendants Sued in their Official Capacities under 42 U.S.C. § 1983 and 42 U.S.C. § 1981 (Counts I and II)**

In Counts I and II, Ms. Wright brings claims against the individual Defendants under §§ 1983 and 1981, naming them in both their individual and official capacities. The individual Defendants argue that, in their official capacities, they are entitled to immunity

6

under state law on Ms. Wright's § 1983 and § 1981 claims seeking compensatory, punitive, injunctive, and declaratory relief. (Defs. Summ. J. Br. at 28.) The court agrees with the individual Defendants' conclusion, in part, but once again relies upon the Eleventh Amendment.

### (a) Compensatory and Punitive Damages

In Counts I and II, Ms. Wright's requests for compensatory and punitive damages against the individual Defendants in their official capacities are proscribed by the Eleventh Amendment. *See Wright v. Butts*, 953 F. Supp. 1352, 1358 (M.D. Ala. 1996). "Lawsuits against a state official in his or her official capacity are suits against the state when 'the state is the real, substantial party in interest.'" *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524 (11th Cir. 1990). In such a situation, "the state is considered the real party in interest because an award of damages would be paid by the state." *Id.*; *see also Wright*, 953 F. Supp. at 1358. Therefore, Ms. Wright's § 1983 and § 1981 claims in Counts I and II against the individual Defendants in their official capacities for compensatory and punitive damages cannot survive summary judgment.

### (b) Declaratory and Injunctive Relief

Ms. Wright also seeks declaratory and injunctive relief. (Compl. at 10.) The court disagrees with the individual Defendants that they are entitled to immunity as to these two requests for relief.

Although retroactive damages are proscribed, the Eleventh Amendment does not protect state officials from being sued for prospective declaratory and injunctive relief to remedy violations of federal constitutional law, even when those officials were acting in their official capacities as state agents. *See Ex parte Young*, 209 U.S. 123 (1908) (holding that a plaintiff seeking prospective relief from the state must sue a state official rather than the state or a state agency even though the suit is actually against the state). Relying upon *Ex parte Young*, the court finds that the individual Defendants are not immune from Ms. Wright's § 1983 and § 1981 claims in Counts I and II seeking prospective declaratory and injunctive relief against them in their official capacities to the extent that these Defendants still are employed by CVCC.

**B.  Count I:  42 U.S.C. § 1983**

Initially, the court must discern what constitutional claims Ms. Wright is pursuing, a task which has not been easy. Count I, which is titled "Violation of Due Process," contains only general references to "due process" with no mention of whether the claims Ms. Wright asserts relate to substantive or procedural due process.[4] Count I resembles the type of shotgun pleading sharply criticized by the Eleventh Circuit. *See Davis*, 516 F.3d at 979-83 (listing the multifaceted and numerous "unacceptable consequences" of "shotgun pleading"). The court has done its best to sort through the allegations presented in the complaint and

---

[4] Although Defendants had an opportunity to move for a more definite statement as provided in Rule 12(e) of the Federal Rules of Civil Procedure, they did not avail themselves of this remedy. *Davis v. Coca-Cola Bottling Co. Consol.,* 516 F.3d 955, 983-84 (11th Cir. 2008).

8

argued in Ms. Wright's briefs, but has found little clarity as to the exact nature of the claims. Liberally construing the complaint and after careful deliberation, the court interprets Count I as a 42 U.S.C. § 1983 claim alleging a violation of Ms. Wright's substantive due process rights as protected by the Fourteenth Amendment.[5]

To prevail on a substantive due process claim, a plaintiff must prove the following two elements: (1) the existence of a protected property or liberty interest; and (2) "arbitrary and capricious conduct on the part of [state] officials by showing that there was no rational basis for . . . [their] decision or that [the decision] was motivated by bad faith or ill will unrelated to academic performance." *Schuler v. Univ. of Minn.*, 788 F.2d 510, 515 (8th Cir. 1986); *see also Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 223 (1985); *Hamil v. Vertrees*, No. 98-D-508-N, 2001 WL 135716, at *7 (M.D. Ala. Jan. 10, 2001).

As to the first element, Ms. Wright seems to argue that she has a constitutionally-protected property right to continued enrollment at an institution of higher learning free from arbitrary state action, a right which the United States Supreme Court and the Eleventh Circuit have assumed, but have not decided, was protected by substantive due process. *See Ewing* 474 U.S. at 223. Defendants assume that Ms. Wright has a substantive due process right to her "continued education in school at CVCC," (Defs. Summ. J. Br. at 35), thereby leaving

---

[5] Ms. Wright's equal protection and procedural due process claims, which are raised for the first time in her summary judgment response (Doc. # 20 at 24), cannot be considered. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

the first element of Ms. Wright's substantive due process claim uncontested.  In harmony with the United States Supreme Court's decision in *Ewing*, as well as in *Board of Curators of University of Missouri v. Horowitz*, 435 U.S. 78 (1978), the court will do the same.  *See also Hammond v. Auburn Univ.*, 669 F. Supp. 1555, 1561 (M.D. Ala. 1987) ("[T]his Court must express the same doubts as Justice Powell in *Ewing* . . . , as to whether or not the plaintiff can even demonstrate a constitutionally protected property or liberty interest in his post-secondary education.  But following the United States Supreme Court's lead [and] that of the Eleventh Circuit Court of Appeals, this Court assumes, *arguendo*, . . . that a constitutional right is implicated."), *aff'd mem.*, 858 F.2d 744 (11th Cir. 1988)

In addition to establishing the violation of a protected property interest, Ms. Wright must raise a genuine issue of material fact that the reason for her dismissal was arbitrary and capricious.  Defendants focus on this element of the claim, arguing that Ms. Wright presents no evidence that Dean Blackwell, Mr. Lowe and Ms. Peterson acted with "improper motive" in connection with Ms. Wright's dismissal from CVCC's nursing program.  (Defs. Summ. J. Br. at 40.)

In *Ewing*, the Supreme Court explained the "arbitrary and capricious" standard and the requisite deference for academic decisions as follows:

> When judges are asked to review the substance of a genuinely academic decision, . . . they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.

*Ewing*, 474 U.S. at 225 (internal footnote omitted) (citing *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982)).  The Supreme Court, thus, equated the "arbitrary and capricious" standard with "a substantial departure from accepted academic norms," *id*., and this is the standard which Ms. Wright must meet.  For the reasons to follow, the court agrees with Defendants that Ms. Wright has failed to provide any evidence of non-academic reasons for her dismissal.

First,  Ms. Wright asserts that she failed as a result of Ms. Peterson's comments to Ms. Wright's instructors that Ms. Wright was a weak student and should not be allowed to pass her classes.  (Gunnels Dep. at 10.)[6]  Ms. Wright claims she had an agreement with Ms. Peterson and Mr. Lowe that she could take NUR200 in place of retaking NUR252 and that although the "D [in NUR252] will not come off of [her] transcript, . . . it will not be held against [her]."  (Wright Dep. at 128.)  Ms. Wright contends that the grade was, indeed, held against her, as evidenced by the fact that she was dismissed.  (Pl. Summ. J. Resp. at 23.) Viewing the evidence in the light most favorable to Ms. Wright, even if Ms. Peterson made comments to Ms. Wright's instructors regarding her lack of academic prowess and indicated to Ms. Wright that the "D" she earned in NUR252 would not be held against her, these facts perhaps arguably support an action in tort for fraud, but they do not serve as a basis for a § 1983 Fourteenth Amendment substantive due process claim.

---

[6] The court will consider only evidence that is admissible on its face or can be reduced to admissible form and that complies with Federal Rule of Civil Procedure 56(e).  *Macuba v. DeBoer*, 193 F.3d 1316, 1322-24 (11th Cir. 1999).  There is no material difference in the statement offered in this case – rank hearsay – and those offered in *Macuba*.  *See id.* at 1325.

11

Ms. Wright has not demonstrated that she was dismissed for any reasons other than those which relate to academic performance.  If Ms. Peterson felt that Ms. Wright was a weak student and was not a strong candidate for graduation, this belief is one that is grounded purely in academics, and if it served as the basis for a decision to fail and dismiss Ms. Wright, the court should not interfere.  *See Ewing*, 474 U.S. at 225

Second, Ms. Wright points to Dean David N. Hodge's letter dated June 30, 2006.  (*See* Pl. Summ. J. Resp. at 11, 18 (citing Pl. Ex. 20).)  Dean Hodge, CVCC's dean of student and administrative affairs, was unfamiliar with the specifics of Ms. Wright's situation and was not aware that Ms. Wright had been instructed to take NUR200 instead of NUR252 to fulfill her academic requirements.  Although Dean Hodge was mistaken, his letter shows no evidence of ill will or other improper motive, or of arbitrary and capricious behavior and, had his information been correct, the letter states a rational basis upon which to base his denial of Academic Bankruptcy.  *See Schuler*, 788 F.2d at 515.

Third, Ms. Wright asserts that she was treated differently from other similarly situated students, presumably in an effort to show that Defendants substantially departed from accepted academic norms when they denied her the opportunity to graduate.  The plaintiff in *Ewing* made a similar argument which the Court rejected.  Addressing whether there was evidence that the university acted arbitrarily in dismissing the plaintiff from its medical degree program, the *Ewing* Court concluded that the university's dismissal of the plaintiff did not "substantially deviate from accepted academic norms when compared with its

12

treatment of other students," noting after an examination of the evidence that the Court was "not in a position to say that these students were 'similarly situated' with [the plaintiff].'" 474 U.S. at 228 n.14.  The court reaches the same conclusion in this case.

The evidence Ms. Wright provides regarding two of the supposed similarly situated students, Ms. Arit D. Umoh ("Ms. Umoh") and Ms. Shannah Lowe ("Ms. Lowe"), comes primarily from third-party statements which Ms. Wright recounts in her deposition and which clearly are hearsay.  *See* Fed. R. Evid. 801(c); (Pl. Summ. J. Resp. at 23; Wright Dep. at 181-185, 189-194, 207-212.)  Ms. Wright's assertion, based solely on hearsay, that Ms. Umoh failed NUR272 twice and still was allowed to graduate (Wright Dep. at 178) is not supported by any admissible evidence.  Ms. Wright provides evidence that Ms. Umoh was allowed to retake NUR272 (Gunnels Dep. at 86-90), but Ms. Wright fails to present any evidence that Ms. Umoh was otherwise similarly situated.  In fact, Ms. Wright's academic record can be distinguished from that of Ms. Umoh, who failed only the clinical portion of NUR272 and passed the didactic portion of the course.  (Gunnels Dep. at 86-90.)  Neither party contends that Ms. Wright failed only a portion of NUR272, and the evidence shows that Ms. Wright failed three of the four exams in the didactic portion of the course.  (Harris Aff. at 12; Harris Aff. attach. 4.)  The fact that the "D" which Ms. Wright earned in NUR272 was her second failure, coupled with the lack of evidence that Ms. Umoh also had two failures, provides a rational basis for why Ms. Wright was excluded from the program while Ms. Umoh was permitted to graduate.  (Gunnels Dep. at 86-90.)

13

Similarly, the only evidence Ms. Wright points to in support of her contention that Ms. Lowe failed the clinical portion of NUR272 is hearsay information she heard from a third party, which Ms. Wright then recounted in her deposition.  (Wright Dep. at 207-211.)  While Ms. Wright provides evidence that Ms. Lowe was allowed to take a makeup lab in NUR272 at some point (Peterson Dep. at 106), this evidence is insufficient to show that Ms. Wright was treated unfairly, as Ms. Wright fails to provide any proof that Ms. Lowe had already failed one class previously, as had Ms. Wright.

The third student to whom Ms. Wright refers, Ms. Carolla Rambo ("Ms. Rambo"), is the only allegedly similarly situated student upon whose deposition Ms. Wright relies to support her assertions.  Ms. Rambo was allowed to retake NUR272 as an independent study in the summer of 2006 after failing the course the previous semester.  (Rambo Dep. at 8-9.) Ms. Rambo only was required to retake the clinical portion of the class and was not required to attend lectures.  (Rambo Dep. at 9.)  Since this was the first and only occasion upon which Ms. Rambo failed a course (Rambo Dep. at 6), Ms. Wright cannot credibly claim that Ms. Rambo was treated more fairly than she.  Ms. Wright already had failed two classes, although her transcript reflected only one course failure due to the technicality discussed previously, when she earned a "D" in NUR272.  Ms. Rambo, like Ms. Umoh and Ms. Lowe, is therefore not a similarly situated individual.

In sum, the court finds that Defendants have presented evidence that "rational bas[es]" existed for the decision to dismiss Ms. Wright from CVCC's Nursing Career Mobility

Program, *Schuler*, 788 F.2d at 515, and that the decision neither was "motivated by bad faith

or ill will unrelated to academic performance," *id.*, nor was a "substantial departure from

accepted academic norms," *Ewing*, 474 U.S. at 225.  Because Ms. Wright has not presented

any evidence which raises a genuine issue of material fact as to whether Defendants acted

arbitrarily and capriciously in their treatment of her, Defendants are entitled to summary

judgment on Ms. Wright's § 1983 Fourteenth Amendment substantive due process claim.

**C.  Count II: 42 U.S.C. § 1981 and Conspiracy**

In Count II, Ms. Wright alleges that her dismissal from CVCC deprived her of the

right to make and enforce contracts, in violation of 42 U.S.C. § 1981 which "protects against

racial discrimination by . . . state actors." *Butts v. County of Volusia*, 222 F.3d 891, 894 (11th

Cir. 2000).  Defendants argue that the fatal flaw in Ms. Wright's § 1981 claim is the absence

of any allegation or assertion that Ms. Wright was subjected to racial discrimination.  (*See,

e.g.*, Defs. Summ. J. Br. at 43-44; Defs. Summ. J. Reply Br. at 35-36.)  The court agrees.

Ms. Wright has not pointed to any evidence that CVCC's decisions relating to her

academic failures and ultimate dismissal from the nursing program were made *on the basis

of her race*.  Evidence on this crucial element of Ms. Wright's § 1981 claim is wholly

lacking.[7]  Alternatively, the court finds that Ms. Wright has abandoned any reliance on

§ 1981 as a basis for relief in this lawsuit, as she has not argued racial discrimination in her

---

[7] Relatedly, the court notes that, to the extent that the complaint properly alleges a § 1981 racial discrimination claim, not only is there an absence of an allegation of racial discrimination, but it also is questionable whether Ms. Wright brings her § 1981 claim via 42 U.S.C. § 1983, as required in this circuit.  *Butts*, 222 F.3d at 894-95; *Vason v. City of Montgomery*, 240 F.3d 905, 906 n.1 (11th Cir. 2001).

summary judgment response.  *See Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. . . . Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").

Moreover, Ms. Wright has not provided a hint as to the statutory or other vehicle through which she brings her "civil conspiracy" claim (Compl. ¶ 41), as pointed out by Defendants (Defs. Summ. J. Br. at 43).  In her summary judgment brief, Ms. Wright cites 42 U.S.C. § 1985 (Pl. Summ. J. Br. at 24-25), but that is not a statute relied upon in her complaint, *see Gilmour,* 382 F.3d at 1315 ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").  She also alludes to § 1983 as the statutory basis, but again that statute is not mentioned in Count II.  In any event, the complete failure of Ms. Wright "to show an underlying actual denial of [her] constitutional rights" would doom any § 1983 conspiracy claim.  *GJR Invs., Inc.*, 132 F.3d at 1370.  For these reasons, Ms. Wright's § 1981 and "civil conspiracy" claims cannot survive Defendants' Motion for Summary Judgment.

**D.  Count III: Tort of Outrage**

In Count III, Ms. Wright brings a state-law claim for outrage.  In its prior Order (Doc. # 46), the court granted Defendants' Motion for Summary Judgment.  Because no claims over which the court had original jurisdiction remained, the court in the same order declined

to exercise supplemental jurisdiction over the state-law claim in Count III and dismissed it without prejudice, pursuant to 28 U.S.C. § 1367(c)(3).  *See Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999) (dismissal of state law claims pursuant to § 1367(c) is encouraged if federal claims dismissed prior to trial).  Accordingly, Count III is no longer before the court.

## V. CONCLUSION

The foregoing sets out the bases for the court's Order (Doc. # 46), granting Defendants' Motion for Summary Judgment as to Counts I and II of the complaint and dismissing without prejudice Ms. Wright's state-law claim in Count III. (Doc. # 17.)  In sum, those bases are as follows:  (1) CVCC is entitled to Eleventh Amendment immunity on Ms. Wright's 42 U.S.C. §§ 1983 and 1981 claims in Counts I and II; (2) the individual Defendants are entitled to Eleventh Amendment immunity on Ms. Wright's §§ 1983 and 1981 claims in Counts I and II asserted against them in their official capacities for monetary damages; (3) Ms. Wright's § 1983 Fourteenth Amendment substantive due process claim in Count I fails on the merits because she has not raised a genuine issue of material fact on the claim's arbitrary and capricious element; (4) Ms. Wright fails to present or rely on evidence of racial discrimination, as required to support a § 1981 claim, and there similarly is no evidence to support a "civil conspiracy" claim; and (5) dismissal of the state-law claim is appropriate pursuant to 28 U.S.C. § 1367.

DONE this 12th day of November, 2008.

                    /s/   W.  Keith Watkins
                    UNITED STATES DISTRICT JUDGE